### 15787

### PELFREY v. OCONEE COUNTY

(36 S. E. (2d), 297)

*Messrs. R. T. Jaynes,* of Walhalla, and *Stephen Nettles,* of Greenville, Counsel for Appellant,

*Messrs. W. A. Bull* and *Culbertson & Brown,* all of Greenville,

December 11, 1945.

Mr. Associate Justice Stukes delivered the unanimous Opinion of the Court.

The respondent was employed by the sheriff of Oconee County as his clerk in 1934 and continued in that capacity. The sheriff was regularly re-elected and still holds the office. The operation of the county jail is a part of his duties. In the beginning of the relationship there was no appropriation for the position of clerk and the sheriff paid respondent a small monthly salary, allowed him a commission on taxes collected and also gave him and his wife board and lodging at the jail where respondent also performed some services in assistance of the sheriff in his duties as jailer.

On November 7, 1934, the sheriff appointed respondent a deputy sheriff, in which instrument it was recited that the appointment was pursuant to section 3486 of the Code of 1932 (of the same number in the 1942 Code); further that the appointment was without pay and the tenure of office should be co-terminal with the sheriff's term of office, unless sooner revoked. In accord with the statute the appointment was approved in writing by the presiding Circuit Judge, also on November 7, 1934, and so dated. There was no revocation by the sheriff and no re-appointment by him during his subsequent terms of office.

The testimony of respondent and that of the sheriff are in agreement that the latter instructed the respondent to perform any and all duties designated by the sheriff. Such were clerical in the main and respondent regularly stayed in the sheriff's office, collected taxes and performed the other

usual office duties. However, there is much evidence in the record that he frequently did work ordinarily incident to the office of deputy sheriff, served process, went on raids, etc., and the sheriff was in the habit of leaving him in full charge of his office during his absence with express or clearly implied authority to perform any and all duties which arose during the sheriff's absence.

Respondent became interested in fingerprinting for the purpose of the detection of crime (with the sheriff's and county supervisor's knowledge and approval) and took a correspondence course. In 1934 or 1935 he proposed to the supervisor that the latter provide supplies for him in this work and that he would in turn fingerprint all prisoners on the chaingang. Such an agreement was made and the county provided a small amount of materials, costing it about $11.50, and the arrangement continued.

At the beginning of respondent's employment in 1934 he was paid entirely by the sheriff, as has been stated, $25.00 per month plus a commission on the delinquent taxes collected, and was furnished living quarters and meals at the jail for himself and his wife, and he assisted in the sheriff's jail duties. Beginning in 1936 the General Assembly provided in the county supply act the sum of $600.00 per annum for the sheriff's clerk, which was paid in monthly installments to respondent upon usual county salary claims. This provision and amount were continued through 1940 and the supply act for 1941 increased the annual salary appropriation to $900.00, or $75.00 per month. When the county appropriation was first made in 1936, the sheriff discontinued his former personal payment to respondent of $25.00 per month but continued to furnish living quarters and meals at the jail for respondent and his wife. During all of this time respondent kept up his fingerprinting activities and made prints of the county prisoners and also obtained fingerprints from objects involved in thievery and other

crimes in an effort to identify the perpetrators. As the result of this and his other crime detection activities, he assisted in the prosecution of defendants in the criminal courts and testified in some cases.

On September 29, 1941, respondent was alone in charge of the sheriff's office when a robbery was reported to have occurred at a country store on the night before. The sheriff was away and after respondent closed the office in the afternoon he went in his automobile to the scene of the crime and inspected the cash box, which had been robbed, and determined to take it to the city of Greenville for the photographing of any fingerprints on it. He had no facilities for photographing and enlarging and had often before called upon the expert in the employ of the city for assistance in such identification work, and this practice was known to and approved by the sheriff and other law-enforcement officers. On the way to Greenville, near Easley, at about 9 o'clock that night, a rear tire on respondent's automobile blew out, causing him to lose control of the car which collided with a pole alongside the highway and the crash resulted in severe and permanent injury of respondent.

He made claim before the Industrial Commission for an award of workmen's compensation which was granted for temporary total disability, permanent functional impairment of his broken leg, loss of an eye and for serious bodily, facial and head disfigurement and medical expenses, etc. The amount of the disability award was based upon a monthly wage of $75.00, in accord with the county appropriation for the salary of the sheriff's clerk and did not include any amount on account of the value of the maintenance of himself and his wife at the jail. Implicit in the findings and award of the Commission, although not expressed, is the conclusion that the accidental injury to respondent arose out of and in the course of his employment.

The county appealed to the Court of Common Pleas upon the sole ground which follows: "That the award of the Commission is erroneous and should be set aside, and an award made for the defendant on the ground that the claimant's injuries did not arise out of or occur in the course of his employment by the defendant." The Court concluded that there was evidence before the Commission supporting its finding and award, which were confirmed. The appeal here is upon a single, admirably concise exception, as follows: "Pelfrey's injuries did not arise out of or occur in the course of his employment by Oconee County."

.The appeal has been interestingly argued, but we think the controlling consideration has been largely overlooked. Appellant principally contends, in effect, that the finding of the Commission must have been upon the ground that respondent was a deputy sheriff and his. commission as such expired at the end of the term of the sheriff during which the appointment was made and there having been no new appointment, respondent was not a deputy sheriff of the county at the time of the accident, and his fingerprinting and other crime detection proclivities were beyond the scope of his employment as clerk; that thus the accident occurred in his pursuit of an unauthorized activity so that the county is not required to respond therefor in workmen's compensation.

This Court had occasion to affirm on appeal an award on account of the death from accident in the course of his employment of a deputy sheriff in the case of *Willis v. Aiken County,* 203 S. C., 96, 26 S. E. (2d), 313. But if appellant's contention that this authority is not applicable in the instant case be conceded, the present award would nevertheless have to be sustained upon consideration of the actual and accepted course of the employment of respondent as clerk to the sheriff, as to the existence of which status there is no dispute. He was engaged at the time of the wreck in

the performance of an errand for the sheriff, unto which he was clearly authorized by the implications from the facts in evidence. He had for years acted for the sheriff in the latter's absence, which he was expressly authorized to do by the sheriff who was clear in his testimony thereabout. No statute specially applicable to the status or duties of the clerk to the sheriff of Oconee County has been called to our attention, but respondent's position was expressly recognized and his salary provided in the annual appropriation acts for the operation of the county, that in force in 1941 when the accident occurred being Act No. 454 of that year, 42 Stat. 1134. There is a general statute, section 3485 of the Civil Code of 1942, which prohibits a sheriff's clerk from the practice of law and from the holding of the office of clerk of court but we find no other statutory limitations.

The compensation law, section 7035-2, Code of 1942, expressly includes employees of political subdivisions of the state, of which a county is, and prescribes that they shall include all employees, with presently inapplicable exceptions; and by the same code section (subsection c) the term "employer" is defined to include the state and all its political subdivisions. In subsection (f) the term "injury" is explained to be such arising by accident "out of and in the course of the employment." The meaning of the latter definition was elucidated in the cited case of *Willis v. Aiken County, supra.* The phrase "out of and in the course of employment" was also examined in the decision of *Johnson v. Merchants Fertilizer Co.,* 198 S. C., 373, 17 S. E. (2d), 695.

The following is from the opinion in *Yeomans v. Anheuser-Busch, Inc.,* 198 S. C., 65, 15 S. E. (2d), 833, 835, 136 A. L. R., 894. "It was also said in the last-mentioned decision of this Court, the *Ham case (Ham v. Mullins Lumber Co.,* 193 S. C., 66, 7 S. E. (2d), 712), that the basic purpose of the Compensation Act is the in-

clusion of employers and employees, and not their exclusion; and we add that doubts of jurisdiction must be resolved in favor of inclusion rather than exclusion." This statement of principle may properly be paraphrased and it said, as follows: Where employer and employee are subject to the compensation act, as here (a county and its sheriff's clerk), an injured employee should not be excluded from the benefits of the law upon the ground that the accident did not arise out of and in the course of his employment when there is substantial doubt (arising from the proven facts) of the propriety of such conclusion. And the conclusion is mainly, at least, one of fact, as to which the finding by the Industrial Commission is final if there be any supporting evidence. Certainly here there was, in view of the facts which have been stated. Liberal construction of this beneficent, remedial law, to which this Court is committed, requires for its fruition liberal application to doubtful facts. Claims should not be denied upon technicalities.

"Denial of awards for any period when the employee is actively engaged in working for his employer, or while doing something reasonably incidental to his employment, should rarely be based on the proposition that it was not in the course of the employment. These words are construed broadly and should continue to be so construed. * * * Common sense indicates that a compensation law passed to increase workers' rights (because their common law rights were too narrow) should not thereafter be narrowly construed." Horovitz on Workmen's Compensation, p. 171. See also, 71 C. J., 658, et seq.

Furthermore, the common law is not as rigid upon the subject of the scope of employment of a servant as is the rule which appellant would apply in this proceeding for workmen's compensation. The following was quoted with approval by this Court in the common-law

case of *Dixon v. Chiquola Manufacturing Co.*, 86 S. C., 435, 68 S. E., 643, 645: "The scope of a servant's duties is to be defined by what he was employed to perform, and by what, with the knowledge and approval of his master, he actually did perform, rather than by the mere verbal designation of his position, and where it is shown that the servants were in the habit of performing the work at which plaintiff was injured, he is not to be considered a mere volunteer."

The problem of this appeal was present in the compensation case of *King v. Wesner*, 198 S. C., 49, 16 S. E. (2d), 289, 294. The employers there contended that the claimant's injury resulted from an activity which was beyond the scope of his employment, but there was evidence that the employee performed similar service before, inferably within the knowledge of the employers or their agents, and the finding of the commission that the accidental death occurred in the course of employment was affirmed. The clear order of the Circuit Court, which was approved and adopted by this Court, contains thereabout the following: "In dealing with a matter such as the scope of the employment of an employee, the terms of which are not usually in writing, it seems to me that the law should be construed with reasonable liberality. The scope of one's employment may be enlarged or limited by the particular circumstances, and it would be difficult, if not impossible, to prescribe a formula which would apply to all cases. See 71 C. J., 667. And clearly under the evidence it could not be said as a matter of law that the employee in this case was not acting in furtherance of his master's business, or that he had gone outside of the scope of his employment and incurred a danger of his own choosing."

The language just quoted is peculiarly applicable to the case in hand. Certainly it is plain that respondent was acting in furtherance of his employer's (the

county's) business and engaged in an act which was the duty of the sheriff's office, the attempted detection of a crime, similar to other frequent activities of respondent of which the employer and its officers had knowledge. The latter is an inescapable inference from the evidence. This is more than necessary for affirmance; there need be only some supporting evidence for the findings and award. 34 S. E. Dig., Part 2, p. 858, *et seq.,* Workmen's Compensation, 1939.

The appeal is dismissed and the judgment affirmed.

MESSRS. ASSOCIATE JUSTICES FISHBURNE, TAYLOR and OXNER and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.