2234

FRED HARBIN, Respondent v. OWENS-CORNING
FIBERGLAS, Appellant.

(450 S.E. (2d) 112)

Court of Appeals

---

424

*Dianne S. Riley,* Greenville, *for appellant.*

*James P. Brislane,* of *Standeffer & Brislane,* Anderson, *for respondent.*

Heard Sept. 7, 1994.

Decided Oct. 3, 1994.

HOWELL, Chief Judge:

Owens-Corning Fiberglas (Owens) appeals from an award of workers' compensation "scheduled member" benefits to Fred Harbin for Deep Venous Thrombosis (DVT), i.e., a blood

clot in Harbin's right leg, under S.C. Code Ann. § 42-9-30 (1985). The Full Commission adopted the single commissioner's order awarding benefits, and the circuit court affirmed. We likewise affirm.

## I. *BACKGROUND*

Harbin injured his back on Sunday, February 25, 1990, while lifting a piece of equipment. He slept on the floor that night because it was painful to sleep in the bed. He returned to work on Monday, with pain developing in his back late in the day. He again slept on the floor that night. He went to work on Tuesday, again experiencing back pain later in the day, and again sleeping on the floor that night. The next morning, Wednesday, February 28, he awoke with severe back pain and called in sick. The company nurse called him at home later that morning, advising that he had an appointment with the company doctor (Abernathy) that afternoon. Dr. Abernathy put Harbin on sick leave for one week, giving him a prescription for muscle relaxers and saying he wanted to see Harbin at the plant next Wednesday.

Harbin testified that he spent the entire week lying on the floor, getting up only to go to the bathroom. His legs were immobile this entire time, because he remained as still as possible due to back pain (and sleeping from the medication). By Tuesday, March 6, 1990, the back pain had largely dissipated. He went to the plant on Wednesday, March 7, and Dr. Abernathy sent him to physical therapy at Magnolia's Therapy, where he received heat and ultrasound treatments for the next two days, i.e., Wednesday, March 7, and Thursday, March 8.

After physical therapy on Wednesday afternoon, March 7, Harbin for the first time experienced pain in his right leg. He had no prior history of leg problems or leg pain. With continuing complaints of leg pain, Dr. Abernathy referred Harbin to Dr. Dameron on March 12, 1990. Dr. Dameron treated Harbin for his back and leg pain for the next month, prescribing crutches, support stockings, and physical therapy. Dr. Dameron did not testify, but his treatment notes reflect a belief that the leg pain was muscular in nature, rather than a clot. Dr. Dameron released Harbin to return to work on April 23, 1990.

After returning to work, Harbin continued to experience leg pain, but his back pain had resolved. Dr. Meadors (apparently another company doctor) treated Harbin in April and May 1990 for continuing leg pain. Dr. Meadors did not testify, but his treatment notes indicate he did not know the cause of the leg pain. On May 15, 1990, Dr. Meadors referred Harbin to Dr. Buice, a vascular surgeon who saw Harbin that same day. Dr. Buice immediately diagnosed Harbin as having a blood clot (DVT) in his leg and put him in the hospital for several days to receive anti-coagulant therapy. Dr. Buice testified that Harbin's inactivity during the week-long sick leave caused the clot. He based this opinion on the history received from Harbin, and the absence of any other DVT risk factors.

## II. *CAUSATION*

On appeal, Owens argues that Dr. Buice's opinion that the DVT was a result of Harbin's work-related back injury is not supported by substantial evidence because Buice based his opinion on inaccurate information.[1] Specifically, Owens contends that because the medical records show that Harbin received physical therapy on Wednesday, February 28 and Thursday, February 29, Harbin was not immobile for an entire week.[2] Owens also relies on the treatment notes of Dr. Dameron, stating Harbin's leg problems were most likely muscular rather than vascular, as well as the absence of any indication from Dr. Abernathy or Dr. Meadors (the company

[1] Owens also relies on several foreign cases refusing compensation for blood clots forming after a work-related injury. Those cases, however, are inapplicable here, because there is no evidence of another potential cause of Harbin's blood clot, and there is medical testimony that the blood clot resulted from the back injury. Moreover, although Harbin's blood clot was not diagnosed for three months, he began having symptoms only 10 days after the work-related accident, and the first vascular specialist to see him diagnosed the clot immediately.

[2] Owens also relies heavily on the medical history taken from Harbin on March 12, 1990, by a physical therapist to whom Dr. Dameron had referred him. This therapist did not testify, nor did any other, and nothing indicates that this therapist was associated with Magnolia's Therapy, to whom Harbin was first referred. The therapist apparently confused Wednesday, February 28, when Harbin first saw Dr. Abernathy, with Wednesday, March 7, when Dr. Abernathy first sent Harbin to physical therapy after the week-long sick leave (according to Harbin's testimony). A telling fact is that 1990 was not a leap year; February therefore had only 28 days. Thus, the notation of physical therapy on "2-29-90" is clearly wrong.

doctors) that Harbin was suffering from a blood clot.

The existence of any conflicting opinions between the ■ doctors is a matter left to the Commission. *See Randolph v. Fiske-Carter Constr. Co.*, 240 S.C. 182, 125 S.E. (2d) 267 (1962). To the extent that there is conflicting evidence on Harbin's week-long inactivity, this is also a matter left to the Commission.[3] *See Greer v. Greenville County*, 245 S.C. 442, 141 S.E. (2d) 91 (1965). Moreover, nothing in the record indicates that Owens made this argument before the Commission, and Owens never asked Dr. Buice whether some activity by Harbin during this period would have affected his causation analysis. Accordingly, we affirm the Commission's finding of causation.

## III. *SCHEDULED MEMBER COMPENSATION*

It is undisputed that Harbin has not suffered any actual loss of earning capacity; he continues to work for Owens and, as the result of a subsequent raise, he now earns more than he did at the time of the accident. Owens argues that the "scheduled member" compensation awarded by the Commission defeats the original and basic purpose of workers' compensation of protecting an employee from lost-earning capacity caused by a work-related injury.

The law clearly allows an award of "scheduled mem-■ ber" compensation under § 42-9-30 without any proof of lost earning capacity. *See Fields v. Owens Corning Fiberglas*, 301 S.C. 554, 393 S.E.(2d) 172 (1990). This is true even if the employee subsequently returns to work and earns more money than before the injury. *E.g., G.E. Moore Co. v. Walker*, 232 S.C. 320, 102 S.E.(2d) 106 (1958); *Lyles v. Quantum Chemical Co. (Emery)*, — S.C. —, 434 S.E. (2d) 292 (Ct. App. 1993) (despite post-injury promotion and substantial pay raise, claimant entitled to receive permanent total disability

---

[3] Owens contends that Harbin "asserted" the accuracy of the medical records showing physical therapy on February 28 and 29 by introducing them into evidence. Assuming this is true, it nevertheless remained a question of conflicting evidence to be resolved by the Commission. See Holcombe v. Dan River Mills/Woodside Div., 286 S.C. 223, 333 S.E. (2d) 338 (Ct. App. 1985) (where there is a conflict in evidence from the same witness, the Commission's findings are conclusive).

for back injury under "scheduled member" statute). Owens' argument to the contrary is a matter for the General Assembly, not this Court.

## IV. *ELECTION OF REMEDIES*

Harbin checked the "General Disability" box on his Form 50 when filing his claim; he did not check the "Specific Disability" box. However, Harbin also stated on his Form 50 that, as further grounds of his claim, "Claimant makes claim to *any and all rights* he is entitled to under the Workers' Compensation Act." (Emphasis added.) Harbin did not specify §§42-9-20 (general disability statute) or 42-9-30 ("scheduled member" statute) in his Form 50. Owens' Form 51 response admitted the back injury but denied that the leg injury was compensable. Owens did not mention §§ 42-9-20 or 42-9-30 in its Form 51, nor did it demand an election between the two.

Neither party mentioned §§ 42-9-20 or -30 at the hearing. The single commissioner awarded Harbin benefits under 42-9-30 for a "scheduled member" injury. In its appeal to the Full Commission, Owens did not raise the election of remedy or failure to plead issue, and the Commission affirmed the award under 42-9-30. Likewise, Owens did not raise the issue on appeal to the circuit court, and the circuit court also affirmed the award under 42-9-30.

On appeal to this Court, Owens for the first time argues that Harbin's checking of "General Disability" on his Form 50 was an "election of remedy" under 42-9-20. Because 42-9-20 requires proof of loss of earning capacity and Harbin did not sustain any such loss, and because he did not plead for "scheduled member" compensation under 42-9-30, Owens contends that the appealed award must be reversed. Also for the first time on appeal, Owens somewhat summarily argues the Commission erred in awarding relief not sought by Harbin in the proceedings below.

Owens' arguments are not preserved for appeal, because it did not raise them to the Full Commission or the circuit court. *See, e.g., Green v. City of Columbia,* — S.C. —, 427 S.E. (2d) 685 (Ct. App. 1993). We also note that Owens does not claim any resulting prejudice, e.g., that the lack of notice of a § 42-9-30 claim caused a failure to procure, discover, or present relevant evidence. Moreover, upon learn-

ing that the single commissioner awarded benefits under § 42-9-30, Owens did not seek to introduce any additional evidence to the Commission as allowed by S.C. Code Ann. § 42-17-50 (1976).

■ However, even if the issue were preserved, Owens would not prevail. "Election of remedies is the act of choosing between different remedies allowed by the law on the same state of facts." *Inman v. Imperial Chrysler-Plymouth, Inc.*, 303 S.C. 10, 13, 397 S.E. (2d) 774, 776 (Ct. App. 1990). If multiple causes of action are raised on the same set of facts, the plaintiff may be required to elect his remedy to prevent a double recovery for a single wrong. *Id.* In the case at bar, there was a single "wrong" (the work-related injury), and a single recovery under § 42-9-30. Thus, because there has been no double recovery, there is no election of remedies problem.[4]

■ As to the merits of the pleading issue, Harbin's claim for "any and all rights" under the Act was a sufficient pleading. *Cf. King v. Wesner*, 198 S.C. 49, 16 S.E. (2d) 289 (1941) (the "niceties of pleadings and process in the law Courts" are not required in workers' compensation proceedings); *cf. also Pelfrey v. Oconee County*, 207 S.C. 433, 36 S.E. (2d) 297 (1945) (claims should not be denied upon technicalities). Moreover, § 42-9-20 specifies the "[a]mount of compensation for partial disability," but it opens with the caveat of "[e]xcept as provided in § 42-9-30." Thus, Harbin's Form 50 claim for partial general disability included a claim for partial loss under § 42-9-30. *See Green*, — S.C. at — n. 2, 427 S.E.(2d) at 687 n. 2 (an election of remedies case interpreting *Fields*, 301 S.C. 554, 393 S.E. (2d) 172, as implying that remedies available under 42-9-30 are also available under 42-9-20); *cf. Roper v. Kimbrell's of Greenville, Inc.*, 231 S.C. 453, 455-56, 461, 99 S.E. (2d) 52, 54, 57 (1957) ("That the Commission made its award under [42-9-30] rather than under [42-9-20] is a matter with which we have no concern. Our inquiry is limited to a single issue, viz: Was there any competent evidence to support the finding of specific disability. . . . ? . . . [An] award under [42-9-30] rather than [42-9-20] is within the power of

[4] Owens' reliance on Inman for the proposition that one may raise an election of remedies problem for the first time on appeal is therefore misplaced.

the Commission if there be evidence to support it.");[5] *Gilliard v. Victor-Monaghan Co.*, 211 S.C. 68, 44 S.E. (2d) 109 (1947) (when claim is filed, all elements of compensation are included; the Act does not contemplate that different parts of total result of one accident should be regarded as separate claims, e.g., temporary and permanent benefits).

## V. *IMPAIRMENT RATING*

Upon returning to work, Owens assigned Harbin to a new job. Although the job was not classified as light duty, it was a "lot lighter job" that allowed Harbin to work while sitting at a table rather than walking around, climbing, and lifting heavy objects. Harbin testified at length about post-injury and post-treatment limitations on the use of his leg. He also testified that he would not be able to resume his pre-injury job duties. Dr. Buice, the vascular surgeon, testified that Harbin has postphlebitic syndrome, which involves problems with pain and chronic swelling of the leg, and that Harbin will probably have to wear a support stocking for the rest of his life to help prevent future clots and leg ulcers. Dr. Buice concluded that Harbin reached maximum medical improvement in March 1991. His impairment rating was based largely upon the symptoms related by Harbin, and he admitted it was a subjective rating.[6] Dr. Buice admitted that he did not use the A.M.A. guidelines to evaluate Harbin's impairment because he did not think they were accurate. Dr. Buice last examined Harbin in May 1992 and found no improvement in his leg, a conclusion based principally on the continuing symptoms related by Harbin.

On appeal, Owens argues that the Commission's findings are not supported by substantial evidence because Dr. Buice admitted his rating was subjective and not based on any objective medical standard, e.g., the A.M.A. Guides,[7] and be-

---

[5] At the time of Roper, the standard of review for factual questions was "any evidence" rather than "substantial evidence."

[6] Dr. Buice admitted his rating might be different if a person could return to the same job as before. Here, however, there is evidence that Harbin could not do the same job as before, although he remained employed after the injury.

[7] We note that Owens did not present any medical testimony based on objective findings or the A.M.A Guides.

cause Harbin's "limits on use" testimony does not support the large award in this case. Owens vaguely challenges the expertise of Dr. Buice, noting that he was a general and vascular surgeon, not an orthopedic surgeon.[8] In also relies on the fact that Harbin successfully returned to full-time work at higher pay, a fact irrelevant under § 42-9-30.

We agree with the circuit court that Dr. Buice's failure to use the A.M.A. Guides went to weight, not admissibility, a ruling not challenged by Owens on appeal and, therefore, the law of this case. See *Englert, Inc. v. The Netherlands Ins. Co.*, — S.C. —, 433 S.E. (2d) 871 (Ct. App. 1993). The weight to be accorded medical opinion testimony is a matter for the Commission. See *Randolph*, 240 S.C. 182, 125 S.E. (2d) 267. Harbin's testimony on loss of use was competent evidence, because there is no indication that the "loss of use" issue was so complicated as to require the use of expert medical testimony only.[9] See *Linen v. Ruscon Constr. Co.*, 286 S.C. 67, 332 S.E. (2d) 211 (1985); *see also Lyles*, — S.C. —, 434 S.E. (2d) 292 (noting testimony from the claimant on his postaccident loss of use and that the claimant could not do the same job, although he had returned to work, to affirm an award under 42-9-30). The extent of loss of use need not be proven with mathematical precision; it need only be shown by evidence giving a reasonable basis for the award. *Id.* We find, therefore, that there is substantial evidence supporting the Commission's impairment rating.

Accordingly, for the foregoing reasons, the appealed order is

Affirmed.

CURETON and CONNOR, JJ., concur.

---

[8] Owens never challenged Dr. Buice's expertise below. We fail to understand its present challenge, given that Harbin suffered a vascular injury, not a bony (orthopedic) injury.

[9] In our view, Owens mistakenly relies on this Court's opinion in *McLeod v. Piggly Wiggly Carolina Co.*, 280 S.C. 466, 313 S.E. (2d) 38 (Ct. App. 1984). There, this Court found the testimony of the claimant and his general practitioner (giving a "nonexpert opinion") to be insufficient, because the injury involved the back (a complicated area of the body), a congenital defect, and a lifting injury that required "a higher degree of expertise." Here, the injury is to the leg, not the complicated area of the back, and there is no evidence of a congenital defect or any other cause of the clot.