**FTHIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Nicholas B. Thompson, Employee, Appellant,

v.

Bluffton Township Fire District, Employer, and State Accident Fund, Carrier, Respondents.

Appellate Case No. 2019-000597

---

Appeal From The Workers' Compensation Commission

---

Unpublished Opinion No. 2022-UP-437
Heard September 13, 2022 – Filed December 7, 2022

---

**REVERSED AND REMANDED**

---

David Holt Berry, of Law Ofc. of David H. Berry, PC of Hilton Head Island, for Appellant.

David Alan Westerlund, Jr., of Willson Jones Carter & Baxley, P.A., of North Charleston, for Respondent.

---

**PER CURIAM:** In this worker's compensation case, the single commissioner and the appellate panel denied Nicholas Thompson, a thirty-one-year-old firefighter, compensation for his back injury, which he claimed was the result of repetitive trauma. Both the single commissioner and the appellate panel found Thompson did not present sufficient evidence of a repetitive trauma injury under section 42-1-172

of the South Carolina Code (2015).  Alternatively, both the single commissioner and the appellate panel found that, even if Thompson's activities as a firefighter were repetitive and caused his injury, Thompson failed to provide his employer, the Bluffton Township Fire District (the Township), with timely notice of a repetitive trauma injury and he was therefore barred from compensation.  We reverse and remand to the commission for a calculation of benefits.

## I.    Facts

Thompson began working as a full-time firefighter at the Township in 2013.  In January 2017, Thompson reported to his Battalion Chief that his back pain was affecting his ability to do his job.  Thompson was directed to discuss medical leave options with the Township's personnel officer, Captain Reid, and to see Dr. Cramer, a pain management physician.  Thompson went to see Dr. Cramer on February 10, 2017 and underwent an MRI, which revealed he had a bulging disc, disc degeneration, and nerve impingement in his lower back.  Dr. Cramer prescribed a course of epidural steroid injections for pain management and referred Thompson to a spine surgeon, Dr. Lindley at the Neurological Institute of Savannah.  Dr. Cramer also wrote Thompson a work note indicating he was restricted to "light/sedentary duty only."  The next day, Thompson gave his Chief the images from his MRI scan, and two days later, he was "pulled off the line" due to the severity of his back injury.  On February 22, 2017, Thompson informed Captain Reid that he wished to file a worker's compensation claim.

On March 30, 2017, Thompson filed a Form 50, claiming he injured his back in June of 2016 when picking up a four-hundred-pound woman.  On June 30, 2017, Thompson filed an amended Form 50 claiming both injury by accident and a repetitive trauma injury, stating: "Claimant was injured lifting an approximately 400 lb. patient; twisting/lifting during Belfair Fire; Cutting/moving trees after Hurricane Matthew."  The Township denied the claim, and a hearing was held in front of the single commissioner.

At the hearing, Thompson described his work as a firefighter, his back pain and treatment, and the three events listed in his Form 50.  According to Thompson's testimony and notes from his healthcare providers, Thompson began experiencing back pain in 2014, and, over the next two years, went to see chiropractors, his family medical physician, and a specialist at Low Country Spine & Sport to discuss his pain.   His symptoms were consistently described as low back pain with radiculopathy down his right leg.  Thompson underwent x-rays, was advised to wear a back brace, prescribed a regimen of stretching and a medication called Skelarin, and was diagnosed with a lumbar ligament sprain.  During these years, Thompson

did not take any time off work due to back pain and testified his pain "didn't interfere with my ability to do my job.  So I just kept doing what, you know, a firefighter would have done; would have toughened up, got through it.  I did my job."

In 2016, Thompson remembered three specific instances where his back pain was "significant" at work.  In the first instance, during the late spring of 2016, Thompson responded to a "lift and assist call" to help a four-hundred-pound woman rise from the floor of her home.  A month or two later—on July 9, 2016—Thompson was at the scene of a large house fire (the Belfair Fire).  During the course of the night, he held and maneuvered a high-pressured hose and replaced air cylinders on the other firefighter's packs—which involved lifting a 45-pound cylinder, filling it, and returning it to each firefighter.  Finally, while doing cleanup in the aftermath of Hurricane Matthew in October 2016, Thompson and his colleagues used chainsaws to cut downed trees into manageable sections and then removed the segments from the road.

Thompson also described his regular duties as a firefighter.  Thompson testified he worked two or three twenty-four hour shifts per week with two days off between shifts.  At the start of each shift, Thompson was required to complete a safety-check of equipment, which included lifting ladders weighing seventy-five pounds; reaching into the back of the truck to pull out a one-hundred-pound power unit; putting the power unit on the ground, starting it, and putting it back in the truck; and doing the same to a hydraulic hook that weighed ninety pounds.  Also, during his shifts, Thompson was required to exercise at the fire station, which had a treadmill, weights, and other professional gym equipment, and he typically worked out for an hour every shift.  Other routine duties included testing fire hydrants and completing training hours, which involved "dragging a hose full of hundreds of pounds of highly pressurized water, putting your gear on that weighs 100 pounds and crawling and climbing and twisting, and using all the heavy equipment . . . the hydraulic tools, ladders, everything."

During testimony at Thompson's worker's compensation hearing, Captain Reid admitted the job of a firefighter is "a very physical job, very demanding, very tough . . . you don't see many 50[-]year[-]old men on fire engines.  It's a physically demanding job that does take a toll."  When Captain Reid was asked whether firefighters were required to use "hose-lines, nozzles, pumps, hydrants, extinguishers, ladders, hand tools, extriction tools, air masks," Captain Reid stated, "Yes ma'am those would be things that we would be expected to at least touch or train with at least on a weekly basis."  When asked whether the job of a firefighter requires "frequent lifting, carrying, ability to bend, strain, stretch and . . . push, pull,

twist, carry and walk with weight,"[1] Captain Reid answered, "Yes ma'am." Captain Reid testified that, in his opinion, these activities would be done on a "frequent basis."

Finally, Thompson testified that, as a result of the delay in receiving treatment for his back injury, his condition had deteriorated. In September 2017 (a month before his hearing in front of the single commissioner), Thompson woke from sleep with his legs shaking violently and began vomiting from "excruciating pain." He went to the emergency room, where he was referred to see a neurosurgeon as soon as possible. Thompson returned to see Dr. Lindley on September 19, 2017. By that time, Thompson was unable to use his bowels without medical intervention, and Dr. Lindley recommended Thompson undergo to a "level two disc replacement surgery" due to Thompson's worsening condition. When asked why Thompson did not formally file a report after the incidents involving the heavy woman, the Belfair Fire, or Hurricane Matthew, Thompson stated, "I didn't know that—that I was required to file an accident report for feeling pain in my job . . . it's a tough job, you feel pain, you take some ibuprofen or something and you move on. I didn't know that I was injured."

In support of his claim of repetitive trauma injury, Thompson submitted a statement from Dr. Lindley into evidence. In relevant part, the statement stated:

> It is my opinion, based upon a reasonable degree of medical certainty, that there is a direct causal relationship between Mr. Thompson's repetitive day-to-day work duties as a firefighter and the [three significant pain events] with the Bluffton Township Fire Department and his lower back injury with radiation into his legs. Furthermore, it is my opinion, based upon a reasonable degree of medical certainty, that Mr. Thompson's work duties most probably caused and/or aggravated his lower back injury with radiation into his legs. It is my opinion, based upon a reasonable degree of medical certainty, Mr. Thompson has received and continues to need treatment, including L4-5 disc replacement surgery, that will tend to lessen his period of disability.

Before ruling on the compensability of Thompson's injury, the single commissioner

---

[1] This wording is directly from the job description posted for Firefighter II, Thompson's official job description, which was also admitted into evidence.

held the record open to allow for the deposition of Dr. Lindley. During the deposition, Dr. Lindley re-affirmed his opinion from his written statement multiple times. However, he did equivocate in his opinion when confronted by the Township with the fact that he had not independently corroborated or investigated Thompson's patient history—but instead had relied on Thompson's description of his work activities and onset of pain in forming his medical opinion.

The single commissioner denied Thompson's claim. Significantly, the single commissioner found Thompson failed to timely report injuries by accident resulting from any of the three incidents in his Form 50 (the lifting of the four-hundred-pound woman, the Belfair Fire, or Hurricane Matthew), and therefore, he was barred from compensation under section 42-15-20(A) of the South Carolina Code (2015). Next, the single commissioner found Thompson failed to prove both that his job duties as a fire-fighter were "repetitive in nature" and that the cause of his injury was repetitive trauma. In so finding, the single commissioner concluded Dr. Lindley's medical opinion should be disregarded as "speculative" because Dr. Lindley could not point to one primary reason for Thompson's injury but rather testified Thompson's injury was caused by multiple factors, including: repetitive heavy-lifting, the three significant pain events listed in Thompson's Form 50, and the demanding physical nature of the job. Finally, the single commissioner found that, even if Thompson had sustained a repetitive trauma injury at work, he failed to timely report it under section 42-15-20(C) of the South Carolina Code (2015), and was therefore barred from recovery. Thompson appealed to the appellate panel, which affirmed and adopted the single commissioner's order in full.

## II.   Law/Analysis

We must affirm the factual findings of the worker's compensation commission if they are supported by substantial evidence. S.C. Code Ann. § 1-23-380(5) (2005 & Supp. 2022); *Lark v. Bi-Lo, Inc.*, 276 S.C. 130, 132–33, 276 S.E.2d 304, 305 (1981). However, "[t]he court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions" are affected by an error of law or are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record[.]" S.C. Code Ann. § 1-23-380(5).

1. Did the commission err in finding Thompson failed to establish he suffered a compensable repetitive trauma injury?

"Workers' compensation laws were intended by the Legislature to relieve workers of the uncertainties of a trial for damages by providing sure, *swift recovery* for

workplace injuries regardless of fault." *Ex parte S.C. Prop. & Cas. Ins. Guar. Ass'n*, 411 S.C. 501, 505, 768 S.E.2d 670, 672–73 (Ct. App. 2015) (quoting *Peay v. U.S. Silica Co.,* 313 S.C. 91, 94, 437 S.E.2d 64, 65 (1993)). "The general policy in South Carolina is to construe the Workers' Compensation Act in favor of coverage, and any reasonable doubts as to construction should be resolved in favor of the claimant." *Pierre v. Seaside Farms, Inc.*, 386 S.C. 534, 541, 689 S.E.2d 615, 618 (2010) (quoting *Hall v. Desert Aire, Inc.,* 376 S.C. 338, 350, 656 S.E.2d 753, 759 (Ct. App. 2007); *see also Pelfrey v. Oconee Cnty.*, 207 S.C. 433, 440, 36 S.E.2d 297, 300 (1945) ("Liberal construction of this beneficent, remedial law, to which this Court is committed, requires for its fruition liberal application to doubtful facts. Claims should not be denied upon technicalities.").

Section 42-1-172 of the South Carolina Code is the exclusive method for determining the compensability of repetitive trauma injuries. *Michau v. Georgetown Cnty. ex rel. S.C. Ctys. Workers Comp. Tr.*, 396 S.C. 589, 594, 723 S.E.2d 805, 807 (2012). The relevant part of section 42-1-172 provides:

> (A) "Repetitive trauma injury" means an injury which is gradual in onset and caused by the cumulative effects of repetitive traumatic events. Compensability of a repetitive trauma injury must be determined only under the provisions of this statute.

> (B) An injury is not considered a compensable repetitive trauma injury unless a commissioner makes a specific finding of fact by a preponderance of the evidence of a causal connection that is established by medical evidence between the repetitive activities that occurred while the employee was engaged in the regular duties of his employment and the injury.

> (C) As used in this section, "medical evidence" means expert opinion or testimony stated to a reasonable degree of medical certainty, documents, records, or other material that is offered by a licensed and qualified medical physician.

> (D) A "repetitive trauma injury" is considered to arise out of employment only if it is established by medical evidence that there is a direct causal relationship

between the condition under which the work is performed and the injury.

A medical expert may rely on a patient's description of his or her job activities in determining whether the activities caused the repetitive trauma injury, and a medical expert does need to read an ergonomics report or independently investigate and corroborate a patient's history in forming a competent opinion of the cause of a repetitive trauma injury. *See Brooks v. Benore Logistics Sys., Inc.*, 437 S.C. 376, 384, 879 S.E.2d 1, 5 (Ct. App. 2022), *cert. granted* (Sept. 8, 2022) ("Nothing in § 42-1-172 prevents a medical doctor from using his expert evaluation of patient history in forming his professional opinion, and we expect the medical community would be surprised to learn the [commission] believes this time-honored practice always entails an unwarranted assumption."). Finally, "[w]hile the [c]ommission may refuse to accept even uncontradicted medical evidence, it must base its refusal on a valid reason supported by competent evidence in the record. Otherwise, the refusal is arbitrary and capricious and warrants reversal." *Id.*

Two errors of law affected the commission's findings that Thompson submitted no evidence proving his duties as a firefighter are repetitive in nature and that Thompson did not prove, by the greater weight of the evidence, that his job duties as a firefighter caused his repetitive trauma injury. The first error was the commission's erroneously narrow interpretation of the word "repetitive" in section 42-1-172. The second error was the commission's improper disregard of Dr. Lindley's expert medical opinion.

It appears, in Thompson's case, that the commission equated activities that are "repetitive" with activities that must be performed on a near constant basis to find that, because Thompson did not lift the same heavy object in the same way throughout each shift, he was unable to prove the admittedly "routine" and "frequent" lifting of heavy objects during his shifts as a firefighter were "repetitive" as required by section 42-1-172.

Nothing in section 42-1-172 demands such a narrow construction of the word "repetitive," and we find this narrow construction goes against the policy of the Worker's Compensation Act, the plain meaning of the word "repetitive," and South Carolina precedent. *See Pierre*, 386 S.C. at 541, 689 S.E.2d at 618 ("The general policy in South Carolina is to construe the Workers' Compensation Act in favor of coverage, and any reasonable doubts as to construction should be resolved in favor of the claimant." (quoting *Hall*, 376 S.C. at 350, 656 S.E.2d at 759); *Stone v. Roadway Express*, 367 S.C. 575, 585, 627 S.E.2d 695, 700 (2006) ("In construing a workers' compensation statute, 'the words must be given their plain and ordinary

meaning without resort to subtle or forced construction to limit or expand the statute's operation.'" (quoting *Adkins v. Comcar Industries, Inc.*, 323 S.C. 409, 475 S.E.2d 762 (1996)); *Rhame v. Charleston Cnty. Sch. Dist.*, 415 S.C. 162, 164, 781 S.E.2d 151, 153 (Ct. App. 2015) (affirming a finding that an HVAC technician experienced a repetitive trauma injury to his lower back when "his job *frequently* required him to lift heating and air conditioning equipment" (emphasis added)); *White v. Med. Univ. of S.C.*, 355 S.C. 560, 562, 586 S.E.2d 157, 158 (Ct. App. 2003) (finding an operating room technician/nursing assistant experienced repetitive trauma injury to his lower back when his job included "removing trash bins from the operating room, moving equipment, lifting patients, and transporting patients to and from other rooms").

We find the record is replete with evidence that Thompson's duties as a firefighter included lifting heavy objects on a regular basis. Thompson's testimony describing his duties during each shift was corroborated by both the Township's official description of Thompson's job and by Captain Reid's own description of the "routine" duties Thompson was required to perform. These duties included lifting heavy hoses, ladders, air canisters, and people. There is no dispute Thompson was required to and did lift heavy equipment on every shift, and his actions in picking up a four-hundred-pound woman, large segments of fallen trees, and pressurized water-hoses are examples of times when he was required to lift heavy objects in the course of the regular duties of employment.[2]

---

[2] The Township asserts that, on his Form 50, and throughout his hearing before the single commissioner, Thompson argued his back injury was caused by both repetitive trauma and three individual accidents. The Township states "[t]o now claim the Commission was incorrect to analyze the three work accidents he listed on his Form 50 as independent episodes of a workplace injury rather than 'mini accidents' is an attempt to revise the history of the claim." The Township contends Thompson is barred from recovering under both theories of compensation because 1) he is procedurally barred from recovering under one of the theories and 2) he did not meet his burden of proving the theory he is barred from recovering under is not the actual cause of his injury. We find these arguments unconvincing. In South Carolina, a worker's compensation claimant may proceed under multiple theories of recovery and will only have to elect a remedy if recovery is proven under both theories. *See Harbin v. Owens-Corning Fiberglas*, 316 S.C. 423, 429, 450 S.E.2d 112, 115 (Ct. App. 1994) ("If multiple causes of action are raised on the same set of facts, the plaintiff may be required to elect his remedy to prevent a double recovery for a single wrong."). To find Thompson cannot now recover for his repetitive

We also find Thompson presented competent medical evidence "that there is a direct causal relationship between the condition under which the work is performed and the injury." § 42-1-172(D). Dr. Lindley was under no misapprehension about the duties Thompson was required to perform as a firefighter when giving his opinion about the cause of Thompson's repetitive trauma injury, and it was his expert medical opinion—recited in both his July 11, 2017 letter and in his sworn deposition testimony—that to a reasonable degree of medical certainty, Thompson's repeated activity of picking up heavy objects and people caused Thompson's L4-5 disc protrusion with radiculopathy, nerve impingement, and bowel and bladder issues. His expert medical opinion did not change when presented with the official job description of a firefighter, nor was it "speculative" merely because Dr. Lindley did not distinguish among the repeated activities performed at Thompson's job, the physical nature of his job, and the three incidents of significant pain detailed in Thompson's Form 50 as the cause of Thompson's injury. We find Dr. Lindley's inability to pinpoint the injury's onset is entirely consistent with a diagnosis of a repetitive trauma injury, which is defined by statute as an injury that "is gradual in onset and caused by the cumulative effects of repetitive traumatic events." § 42-1-172(A).

Finally, to the extent Dr. Lindley equivocated in his deposition testimony, it was only when presented by the Township's counsel with the legal artifice that he must independently investigate and corroborate Thompson's patient history in order to form a competent opinion. Our court in *Brooks* specifically found this is "the classic fallacy known as the appeal to ignorance." *Brooks*, 437 S.C. at 384, 879 S.E.2d at 5. Here, there was no question Dr. Lindley understood the job duties Thompson was required to perform, and, throughout questioning, opined these job duties caused Thompson's back condition to deteriorate to the point where Thompson needed medical and surgical intervention. The rejection of Dr. Lindley's testimony on the basis that he could not rely on Thompson's patient history in forming a competent opinion is error and demonstrates the commission has conflated its role of independent fact-finder with the role of a medical expert providing an opinion as to what conditions cause a repetitive trauma injury. *See id.* ("Nothing in § 42-1-172 prevents a medical doctor from using his expert evaluation of patient history in forming his professional opinion, and we expect the medical community would be surprised to learn the [commission] believes this time-honored practice always entails an unwarranted assumption."); § 42-1-172(B) ("An injury is not considered

---

trauma injury merely because he chose to proceed under two theories of recovery on his Form 50 is error.

a compensable repetitive trauma injury *unless a commissioner makes a specific finding of fact* by a preponderance of the evidence of a causal connection that is established by medical evidence between the repetitive activities that occurred while the employee was engaged in the regular duties of his employment and the injury." (emphasis added)).

In conclusion, we find the reasons Thompson was denied recovery were warped by the commission's too narrow definition of the word "repetitive" and the commission's improper rejection of expert medical testimony. We find the substantial evidence in the record indicates Thompson is entitled to recovery under section 42-1-172 for a repetitive trauma injury he incurred as a result of his work as a firefighter. *See* § 1-23-380(5) (providing that this court "may reverse or modify the decision of the worker's compensation commission if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are . . . affected by an error of law" or are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record"). Therefore, the commission's ruling that Thompson did not prove, by the greater weight of the evidence, that he sustained a repetitive trauma injury while working as a firefighter at the Township is reversed.

2. Did the commission err in finding Thompson failed to give proper notice of his repetitive trauma injury?

We find the commission erred in ruling Thompson is time-barred under section 42-15-20(C) from recovering compensation for his repetitive trauma injury. Section 42-15-20(C) states:

> In the case of repetitive trauma, notice must be given by the employee within ninety days of the date the employee discovered, or could have discovered by exercising reasonable diligence, that his condition is compensable, unless reasonable excuse is made to the satisfaction of the commission for not giving timely notice, and the commission is satisfied that the employer has not been unduly prejudiced thereby.

Back pain is not the same as a back injury when evaluating the date a claimant reasonably should have known he or she has experienced a repetitive trauma injury. *See Rhame*, 415 S.C. at 168, 781 S.E.2d at 154 ("The evidence in the record indicates Rhame began experiencing back *pain* in 1994 or 1995, not that he suffered an *injury* in 1994 or 1995."). In *Rhame*, the claimant began to experience back pain

as a result of his job as early as 1994 or 1995, began receiving treatment for that back pain in 1994 or 1995, and missed days from work on and off from that time due to ongoing pain in his back. *Id.* at 167–68, 781 S.E.2d at 154–55. However, the claimant did not report a repetitive trauma injury to his employer until May of 2009, when, after picking up a "particularly heavy" air-conditioning unit, he "couldn't even stand up straight," and his doctors told him he could no longer work. *Id.* at 167, 781 S.E.2d at 154–55. This court held the commission erred in finding the claimant did not timely report his repetitive trauma injury, reasoning there was no evidence in the record indicating the claimant should have known his claim was compensable until May of 2009. *Id.* at 169–70, 781 S.E.2d at 155.

The facts here are similar to those in *Rhame*. We find Thompson, although experiencing and receiving treatment for back pain from 2014 until 2016, could not have reasonably known it was a compensable repetitive trauma injury until February 2017, when the pain from his gradual onset injury became so intense that he was unable to complete daily duties as a firefighter and he sought medical treatment from Dr. Cramer. Dr. Cramer diagnosed him with a significant injury and told him he would only be able to complete light duty work. The record is clear Thompson reported this injury to Captain Reid within days of receiving this news from his doctor. Accordingly, the substantial evidence in the record does not support the commission's finding that Thompson did not timely report his injury, and the ruling that Thompson is time-barred under section 42-15-20(C) from recovering compensation for his repetitive trauma injury is reversed. *See* § 1-23-380(5) (providing that this court "may reverse or modify the decision of the worker's compensation commission if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions or decisions are . . . affected by an error of law" or are "clearly erroneous in view of the reliable, probative and substantial evidence on the whole record").

Because we believe the commission's findings and conclusions are not supported by substantial evidence and are affected by errors of law, we reverse and remand this case to the commission for calculation of benefits.

**REVERSED AND REMANDED.**

**GEATHERS, MCDONALD, and HILL, JJ., concur.**