15801

HALKS v. RUST ENGINEERING CO. *ET AL.*

(86 S. E. (2d), 852)

*Messrs. Wise & Whaley,* of Columbia, Counsel for Appellants,

*Mr. Heyward Brockinton,* of Columbia, Counsel for Respondent,

February 13, 1946.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous Opinion of the Court.

This is a proceeding under the Workmen's Compensation Act. The claimant, Walter P. Halks, twenty-six years of age and a carpenter by trade, was injured while in the employ of the Rust Engineering Company on April 21, 1941, when a scaffold on which he was working broke and he fell about twenty feet to the concrete below. It is admitted that the accident arose out of and in the course of his employment. He was immediately taken in an ambulance to a hospital where he was examined by Dr. Owens, who concluded that

the patient should be attended by an orthopedic surgeon and called in Dr. Epting. The examination by these physicians revealed that claimant sustained a "split fracture of oscalcis and a compression fracture of first lumbar vertebrae." His back was placed in a plaster cast and he remained in the hospital under the care of Dr. Epting until May 30, 1941, when he was allowed to go home. The cast was removed in September and on October 1, 1941, Dr. Epting signed a certifi ate to the effect that the disability from the injury had terminated and that claimant would be able to return to work on October 6, 1941. He was advised, however, by thi:1 physician to do only light work for awhile.

Several weeks after the injury a claim adjuster for the insurance carrier visited claimant at the hospital and the parties entered into an agreement in the usual form which provided for the payment of compensation from the date of the injury "until terminated in accordance with the provisions of the Workmen's Compensation Law", at the rate of $21.00 per week, based upon an average weekly wage of $35.00. The Industrial Commission approved the agreement and awarded compensation for temporary total disability, at the rate agreed upon, "beginning from April 21st and continuing for the period of total disability not to exceed the provisions of the Act." On May 29, 1941, the day before claimant left the hospital, Heyward Brockinton, Esq., wrote a letter to the Industrial Commission stating that he represented the claimant and requested that the case be docketed and set "for an early hearing" to which the secretary of the Commission on the following day replied: "We have entered this case upon our records but will not set a date as yet, due to the fact that Mr. Halks is still in the hospital, and a hearing at this time would be premature as the maximum healing period has not as yet been reached. Mr. Halks is, however, drawing temporary disability compensation weekly. We will advise you at a later date when the hearing will be held."

The insurance carrier paid compensation at the rate fixed in the award to October 6, 1941, when it was discontinued

on the strength of Dr. Epting's certificate that claimant was then able to return to work. Through error compensation for one week during the above period was not paid until January 5, 1942, at which time the error was first discovered. After Mr. Brockinton notified the Commission that he represented the claimant, the weekly compensation checks were deliverd to claimant through his attorney. The adjuster for the insurance carrier testified that he informed Mr. Brockinton of Dr. Epting's report and advised him that the payment of January 5, 1942, was a final one. He further testified that he heard nothing further from claimant's attorney and closed the case. However, it is undisputed that claimant refused to sign a final settlement receipt.

Claimant testified that he was unable to do any work from the date of his injury to May, 1942, at which time he secured light work with a contractor and received weekly wages of approximately $18.00. From May, 1942, to June, 1943, he worked for several individuals and firms and during most of this period earned as much as, and at times more than, he received at the time of his injury. Claimant further testified that this work was of a light nature; that since the accident he has continuously suffered from his injuries; that he has been unable to do any work which required stooping or heavy lifting; and that finally in June, 1943, he was compelled to discontinue all work.

On October 3, 1942, the adjuster for the insurance carrier wrote the following letter to the Industrial Commission: "We have received your request for Final Settlement Receipt in connection with this case, and we wish to advise that we were never successful in getting this employee to sign a Final Settlement Receipt. All compensation due has been paid." On August 12, 1943, claimant wrote a letter to the Industrial Commission in which he stated that he was unable to work and support his family and inquired if he could secure further compensation. Thereafter hearings were had before Commissioner Dukes in October and December, 1943.

At the first hearing the employer and carrier made a special appearance and objected to the jurisdiction of the Commission on the ground that any further claim was barred by Section 46 of the Act, Section 7035-49 of the 1942 Code, as more than a year had elapsed since the date of the last payment of compensation. The objection was overruled and the hearing proceeded subject to the jurisdictional objection. On May 11, 1944, Commissioner Dukes awarded claimant $1,500.00 "for disfigurement of a serious nature," and further awarded compensation "from the date he was unable to continue work until he is released by a competent physician as being able to return to work." His finding of fact as to disfigurement is as follows: "I have observed Mr. Halks carefully and I find that he weighs about 140 pounds, having gaunt figure, being stooped, and that he walks with a decided limp and that his feet and ankles were swollen." This award was thereafter confirmed by a majority of the full Commission, from which the insurance carrier and employer appealed to the Circuit Court. Thereafter the matter was heard in the Circuit Court and on May 12, 1945, an order was filed affirming the award of the Industrial Commission.

The first question to be determined is appellants' contention that the claim is barred by Section 46 of the Act, which authorizes the Commission to review an award on the ground of a change in condition, but provides that "no such review shall be made after twelve months from the date of the last payment of compensation." Respondent asserts that he is not seeking to review an award on the ground of a change in condition. He contends that the compensation now sought is on the original claim.

In *Gold v. Moragne et al.,* 202 S. C., 281, 24 S. E. (2d), 491, the Court said: "The agreement for compensation for temporary total disability, timely filed and approved as hereinbefore stated, gives all the information that could reasonably be required to be contained in a claim to be filed by or in behalf of an employee." Indeed, appellants make no contention that there was a failure to comply with Section 24

(a) of the Act, Section 7035-27 (1) of the Code of 1942, which requires a claim for compensation to be filed within one year after the accident. It was further held in that case that when a claim is filed, all elements of compensation are included, the Court stating that "it was not contemplated by the Act that different parts of the total result of one accident should be regarded as separate claims."

It follows, therefore, that respondent's claim in the instant case included not only compensation for temporary total disability, but also for any permanent disability or disfigurement. This claim has never reached a final hearing. There has been only an agreement as to compensation for temporary total disability. Neither permanent disability nor disfigurement has ever been considered. After paying compensation for a period of time, the insurance carrier, on the strength of the certificate of the attending physician, desired to discontinue the payment of temporary total disability. It sought the consent of claimant to what is styled as a final compensation receipt. Claimant refused to sign it. The insurance carrier should then have known that claimant probably intended to ask for further compensation and was unwilling for the case to be closed. No effort was made to bring the matter to a final conclusion by having it set down for a hearing. The insurance carrier, nevertheless, without seeking the permission of the Industrial Commission and without notice to claimant, proceeded to close its file when it made the last payment of compensation in January, 1942. Appellants contend that thereafter any further claim for compensation was barred except on the ground of a change in condition under Section 46. We do not think this position is tenable.

Section 57 of the Act, Section 7035-60 of the Code of 1942, and Rule 12 of the Commission contemplate that if the insurance carrier desires to stop further payment of compensation under a temporary award, application should be made to the Commission for permission to do so. Notice should be given to the employee. The question can then be determined by the Commission. Where there is a disagree-

ment between the parties as to the right to discontinue further weekly compensation, the matter will be placed on the calendar for a hearing. If it is determined that the carrier is entitled to discontinue further payments of total temporary disability, the question of any permanent disability or disfigurement would then be ripe for determination. But apart from the foregoing requirements we do not think the right of a claimant to further compensation can be adjudicated without notice to him and an opportunity afforded for a hearing, if he desires to contest the issue.

In *Frizzi's Case*, .... Mass., ...., 130 N. E., 95, there was an award of compensation and thereafter the payments were discontinued with the approval of the Industrial Accident Board. Subsequently, after a hearing, the Board determined that total incapacity extended beyond the date when the payments were discontinued. In answer to the contention of the insurer that the Board was without authority to award additional compensation, the Court said: "Although the payments for total incapacity were discontinued with the approval of the Board, there was no adjudication that all incapacity had ceased. The effect of the order was not a decision on the merits. The suspension of payments by the insurer, with the ex parte approval of the board, is to be construed as leaving open for future determination the question whether, after hearing, the payments were rightly discontinued, and also the question whether partial incapacity existed, and, if so, its extent."

We approve the following language of the North Carolina Supreme Court in *Hanks v. Southern Public Utilities Co.*, 210 N. C., 312, 186 S. E., 252: "A Claim for compensation lawfully constituted and pending before the commission may not be dismissed without a hearing and without some proper form of final adjudication. No statute of limitations runs against a litigant while his case is pending in court." As further pointed out in that case, cases before the Industrial Commission "should be disposed of by some award, order, or judgment final in its effect, terminating the litigation."

We conclude that respondent's claim for compensation was still pending before the Industrial Commission when it made the award in question. Viewing the matter in this light, we think it is clear that Section 46 is not applicable. Respondent is not seeking to increase or modify a previous award on the ground of a change in condition, but is asking for a final determination of his original claim. The hearing requested in Mr. Brockinton's letter of May 29, 1941, has never been had. The situation is analogous to that of a case pending in court which is allowed to remain on the calendar for a long period of time without either party making any effort to secure a final determination. The result of this conclusion is not, as suggested by appellants' counsel, to permit a claim to remain pending indefinitely. As stated in *Hanks v. Southern Public Utilities Co., supra,* "it was at all times open to the defendant (employer and carrier) to move for a hearing, or to the Commission of its own .motion, upon notice, to order a hearing. But this was not done."

We shall next consider appellants' contention that the award for temporary total disability is too vague and indefinite. We think this contention should be sustained, Compensation is to begin, under the terms of the award, "from the date he (claimant) was unable to continue work." The date on which claimant became unable to continue his work should have been definitely fixed by the Commission. Moreover, during a portion of the period in controversy claimant was working and suffered no diminution in his earnings. During that time he would not be entitled to draw total disability, although the performance of the work may have been attended with pain and discomfort from the injuries sustained. *Ingle v. Dunean Mills,* 204 S. C., 505, 3& S. E. (2d), 301; *Parrott v. Barfield Used Parts et al.,* 206 S. C., 381, 34 S. E. (2d), 802. The award further provides that compensation is to continue "until he (claimant) is released by a competent physician as being able to return to work." We think the question of when claimant is able to return to work is one for determination by the Commis-

sion, although its finding with respect thereto may be based on the testimony of a physician or any other relevant evidence which may be offered. The case should be remanded to the Commission for the purpose of fixing with more certainty the period during which compensation for temporary total disability should be paid.

The only other question which we find it necessary to consider is appellants' contention that the claim for disfigurement was prematurely considered. The award under consideration, apart from that portion relating to disfigurement, is only for temporary total disability. Implicit in this award is a finding of fact by the Commission that the maximum healing point has not been reached. As stated by this Court in *Gold v. Moragne et al., supra,* the extent and permanency of disfigurement cannot "usually be determined in advance of the completion of the healing process." Under the facts of this particular case, we think the claim for serious bodily disfigurement was prematurely considered. For this reason the disfigurement award is reversed. We, therefore, do not undertake to pass upon appellants' further contention that the evidence is insufficient to sustain a claim for serious bodily disfigurement.

The order of the lower Court is modified in accordance with the views herein expressed, and the case is remanded for the purpose of having the award for temporary total disability made more definite and certain by the Industrial Commission, and for the further purpose of allowing the Commission to retain jurisdiction in order to make a final determination of respondent's claim at the appropriate time.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES STUKES and TAYLOR and MR. ACTING ASSOCIATE JUSTICE STEVE C. GRIFFITH concur.