0605

Walter FLOYD, Employee, Respondent, v. CITY OF CHARLESTON, Employer and Self-Insurer, Appellant.

(339 S. E. (2d) 166)

Court of Appeals

*Donald M. Williams* of *Regan & Williams*, Charleston, *for appellant.*

*Fred W. Riesen, Jr.* of *Riesen, McConnell, Bradley, Guerard & Ling*, Hanahan, *for respondent.*

Heard Oct. 23, 1985.

Decided Jan. 14, 1986.

CURETON, Judge:

In this workers' compensation case the South Carolina Industrial Commission affirmed the order of the single commissioner who found that the respondent, Walter Floyd, was entitled to an award covering two periods of total disability, a period of partial disability[1] and medical expenses. The circuit court affirmed the commission's decision but modified the award by lowering the wage rate used to calculate the partial disability award and crediting the employer for the salary Floyd received from the United States Air Force Reserve. We affirm in part and reverse in part.

At the time of his injury, Floyd who had held various service-related jobs, had been employed by the City of Charleston as a fire fighter for approximately five and one-half years and as an assistant maintenance supervisor at Ashley Oaks Apartments for twelve weeks. On June 13, 1980 he hurt his neck while working for the fire department when one of his co-workers engaged him in horseplay[2] by grabbing him from behind while he was washing dishes, locking him in his grip and falling to the floor.[3] When the two men fell Floyd felt a "severe straining and tightening of [his] neck."

---

[1] This award pertains to a decrease in income caused by the loss of a second job.

[2] Horseplay is a term used to describe "pranks and practical jokes which are frequently indulged in by congregated workmen." *Allsep v. Daniel Construction Co.*, 216 S. C. 268, 273, 57 S. E. (2d) 427, 429 (1950).

[3] The co-worker testified that after he grabbed Floyd, his grip was momentarily broken and Floyd could have terminated the wrestling match. Floyd denies that he freed himself from his co-worker's grasp.

Not realizing the seriousness of his injury, he good naturedly accepted the fact his co-worker had won the "wrestling match" and returned to work. Thereafter, he informed his supervisor that he had been injured and that the pain in his neck had worsened. He was unable to work from June 25, 1980 to July 30, 1980. On this date Floyd's physician advised him to return to work after Floyd reported to him that he was "ninety-nine percent well."

Floyd's health seemed to improve until September 5, 1980 when he was admitted to the hospital because of severe neck pain. He remained there for about two weeks. On September 24, 1980 he was examined by his physician who determined that he was doing well and could return to work. Floyd then resumed working for the fire department performing all of his usual tasks. Thereafter, he was involved in another horseplay incident when he sprayed a co-worker's cigar with air freshener. In this latter incident, the men wrestled over a can, overturned a couch and fell to the floor with no apparent injury to Floyd.

In April 1981 after passing the physical entrance examination, Floyd entered the United States Air Force Reserve and completed his basic training. In January 1982 he started his own part-time washer-dryer repair business. In April and May 1982 he returned to the physicians who had treated him in 1980 and follow-up x-rays indicated that he had degenerative disc disease with some spur formation. On May 31, 1982 Floyd filed a claim for disability benefits. He is still employed by the Charleston Fire Department and has received raises since the accident.

The employer raises three issues on appeal: (1) whether Floyd sustained a compensable bodily injury while performing a service growing out of or incidental to his employment; (2) whether the circuit court erred in sustaining the commission's finding that the injury resulted in Floyd's being disabled from the second job; and (3) whether the circuit court erred in not giving the employer credit for the raises which Floyd received after returning to full-time employment with the fire department.

Our review of the commissioner's findings of fact concurred in by the circuit court is limited to determining whether the findings are supported by sub-

stantial evidence. *Lowe v. Am-Can Transport Services, Inc.,* 283 S. C. 534, 537, 324 S. E. (2d) 87, 89 (Ct. App. 1984); *Lark v. Bi-Lo, Inc.,* 276 S. C. 130, 276 S. E. (2d) 304 (1981). Substantial evidence is something less than the weight of the evidence. *Palmetto Alliance, Inc. v. South Carolina Public Service Commission,* 282 S. C. 430, 432, 319 S. E. (2d) 695, 696 (1984); *Todd's Ice Cream, Inc. v. South Carolina Employment Security Commission,* 281 S. C. 254, 258, 315 S. E. (2d) 373, 375 (Ct. App. 1984). Substantial evidence "is evidence which, considering the record as a whole, would allow reasonable minds to reach the [same] conclusion that the administrative agency reached. . . ." *Lark v. Bi-Lo, Inc.,* 276 S. C. at 136, 276 S. E. (2d) at 306. We may not overturn findings of fact made by an administrative agency "unless there is no reasonable probability that the facts could be as related by a witness upon whose testimony the [agency's ] finding was based." *Lark v. Bi-Lo, Inc.,* 276 S. C. at 136, 276 S. E. (2d) at 307. However, we "may reverse or modify an administrative decision if such decision is affected by errors of law, characterized by an abuse of discretion, or clearly erroneous in view of the substantial evidence on the whole record." *Todd's Ice Cream, Inc.,* 281 S. C. at 258, 315 S. E. (2d) at 375; Section 1-23-380(g), 1976 Code of Laws of South Carolina, as amended.

The employer argues that Floyd's injury neither arose out of nor was incident to his employment because at the time of the injury Floyd was engaged in horseplay with a co-worker. We reject this argument. Our Supreme Court has sustained an award of compensation to an innocent victim of horseplay i.e. to one who was "engaged in the performance of his duties and had not departed from them in the slightest when the apparently playful [act] of his fellow employee resulted in the fall and injury." *Allsep v. Daniel Construction Co.,* 216 S. C. 268, 271, 57 S. E. (2d) 427, 428 (1950). Here, there is substantial evidence that Floyd was performing the work related task of washing dishes when his co-worker surprised him by grabbing him from behind and wrestling him to the floor. Following the precedent of *Allsep* we affirm the commissioner's finding of fact that Floyd's injuries were incidental to his employment.

The employer next argues that Floyd should not receive partial disability benefits to compensate him for salary lost after being fired from his second job because there is "no medical advice or [lay] testimony concerning his ability to work [two] jobs and no other testimony in the record concerning his search for and inability to find other employment, either due to his inability to get hired or the lack of a job market." We agree.

In *Walker v. City Motor Car Co.*, 232 S. C. 392, 102 S. E. (2d) 373 (1958) the Court set forth the law relative to entitlements to awards for partial disability. The essential considerations are:

(1) The burden is upon claimants to prove such facts as will render the injury compensable within the provisions of the Workers' Compensation Act.
(2) The award must not be based upon surmise, conjecture or speculation.
(3) Disability means incapacity because of injury to earn the wages which the claimant was receiving at the time of the injury in the same or any other employment.
(4) Disability is to be measured by the claimant's capacity or incapacity to earn the wages which he was receiving at the time of his injury.
(5) There is no compensation for pain and suffering, discomfort or difficulty in performing work as long as there is no reduction of earning capacity.
(6) Loss of earning capacity alone is the criterion and medical opinion as to the extent of physical disability can have no probative value against actual earnings.

232 S. C. at 396, 102 S. E. (2d) at 375.

Here, Floyd did not sustain his burden of showing that he could neither hold any other employment nor locate a second job. *See Shealy v. Algernon Blair, Inc.*, 250 S. C. 106, 156 S. E. (2d) 646 (1967). (Supreme Court reversed an award of disability benefits when a review of the record revealed no support for the award. The claimant failed to establish incapacity to work, which could have been proved by evidence showing the claimant had made reasonable efforts to obtain employment). The fact that Floyd did

not work a second job between September 1980 and January 1982 "is not in itself determinative of the extent of loss of his earning capacity." *See Bowen v. Chiquola Manufacturing Co.*, 238 S. C. 322, 328, 120 S. E. (2d) 99, 102 (1961).

The record does not reveal Floyd's loss of earning capacity. It merely reveals his loss of earnings. The record contains no evidence that he searched for another service-related job after his period of temporary total disability had ended. Additionally, the fact that he was physically able to continue working for the fire department, that his physician advised him that he could return to work without putting any restrictions on the work which Floyd could perform, and that he was well enough to pass the United States Air Force Reserve physical examination and complete basic training indicate that Floyd did not suffer a loss of earning capacity arising from the injury. An affirmance of an award to Floyd for partial disability based upon the record would be based upon surmise, conjecture and speculation to the effect that he could neither be reemployed by Ashley Oaks nor employed in any other employment that he was qualified to perform. For this reason, we reverse the partial disability award.

The employer's third argument is that the pay increases which Floyd received after returning to work should offset, in part, the amount to be paid to him as partial disability benefits. The employer has not cited any statute or case law which would require wage increases to be a factor in determining the amount of a partial disability award. Since we have reversed the partial disability award we need not consider this argument.

In conclusion, we affirm the order of the trial judge which found that Floyd's injury was incidental to his employment and that he was properly awarded temporary total benefits and compensation for his medical expenses. However, our review of the record reveals no evidence that Floyd's injury diminished his earning capacity to the extent that he could not work a second job. We note that the record reveals that Floyd has made or anticipates making a claim for compensa-

tion for permanent physical impairment. Our decision to reverse the partial disability award should not be construed as a comment upon the merits of that claim.

The order of the circuit court is

Affirmed in part and reversed in part.

SANDERS, C. J., and GOOLSBY, J., concur.