535 S.E.2d 146

**Katherine Jane NETTLES, Appellant,**

v.

**SPARTANBURG SCHOOL DISTRICT # 7, Employer, and SC School Boards Self–Insurance Trust Fund, Carrier, Respondents.**

No. 3213.

Court of Appeals of South Carolina.

Heard May 10, 2000.

Decided July 10, 2000.

Rehearing Denied Sept. 2, 2000.

582

James C. Cothran, Jr., and Laura A. Filler, both of Spartanburg, for appellant.

Michael A. Farry and David A. Wilson, both of Horton, Drawdy, Ward & Black, of Greenville, for respondents.

CURETON, Judge:

In this workers' compensation case, Katherine Nettles appeals the order of the circuit court affirming the full commission's findings that she reached maximum medical improvement (MMI) on April 14, 1997; sustained a compensable injury to her spine and stomach; and was entitled to permanent partial disability of 25% and 10%, respectively. Nettles contends she should have been awarded total or partial disability benefits under the general disability statutes, or, alternatively, the commission should have recognized the injury to her right lower extremity. Furthermore, she contends the commission erred in failing to order her employer to pay the medical bills for her stomach problems and in determining that she reached MMI on April 14, 1997, rather than in June of 1997. We affirm in part, reverse in part and remand.

## FACTS

On April 16, 1993, Nettles sustained an injury by accident to her spine while opening a box of textbooks as part of her employment with Spartanburg County School District # 7 (Employer). Nettles sought treatment of the injury from a neurologist, Dr. John K. Johnson, in June of 1993. Initially, Dr. Johnson treated Nettles' injury conservatively with thera-

py; however, when the pain persisted he performed an anterior cervical diskectomy of the C5 and C6 vertebrae and an autogenous iliac bone graft fusion (collectively "ACDF") on February 1, 1994. The ACDF procedure involved the harvesting of bone from Nettles' right iliac crest for use in the fusion of two vertebrae in Nettles' spine.[1] Nettles recovered nicely from the ACDF surgery and was released from Dr. Johnson's care on April 18, 1994.

On August 24, 1994, Nettles filed a Form 50 with the South Carolina Workers' Compensation Commission (commission) claiming total specific disability of her back and neck resulting from the aforementioned injury by accident. She also requested a hearing before the commission.

On November 2, 1994, approximately seven months after Dr. Johnson released Nettles from his care following the ACDF surgery, she returned to Dr. Johnson for pain emanating from the incision made during the graft taken from her iliac crest. After several office visits, Dr. Johnson was unable to determine the cause of Nettles' discomfort, so he performed exploratory surgery of the iliac crest on February 13, 1995. The surgery did not relieve the pain so Dr. Johnson referred Nettles to a general surgeon, Dr. Joseph McAlhany, who performed a third surgery on her iliac crest in June of 1995.

Dr. Johnson prescribed various medicines to treat the pain in Nettles' iliac crest, including Ansaid, Tylenol # 4, Lortab 5, Snyalgos DC, Ultram, Inderal, Ativan, Phenergan (for nausea), and Elavil (for depression). As she took these medicines, Nettles began to experience weight loss, nausea, and weakness.

On February 6, 1996, Nettles collapsed while attending vocational rehabilitation therapy at the Center for Health and Occupational Services. She was rushed to the Mary Black Memorial Hospital where it was discovered that she had severe anemia, stomach ulcerations, and was underweight. Dr. Frank Lopez, a gastroenterologist, opined to a degree of medical certainty that the cause of Nettles' ulcers were some of the medications she had been prescribed during the treat-

---

1. An *iliac crest* is the "thickened and expanded upper border of the ilium." *Blakiston's Pocket Medical Dictionary* 386 (3rd ed.1973). The *ilium* is the upper "broad portion of the hipbone." *Id.*

ment of the pain in the iliac crest. Dr. Lopez could not assign any impairment rating for Nettles' gastrointestinal disorder because he could not assess other factors such as stress or physical activity.

On May 2, 1997, the Employer filed a Form 21 with the commission for a hearing to stop payment because Nettles had reached MMI and to pay compensation in the amount of 19% to the leg.[2] The hearing was conducted on July 25, 1997, before a Single Commissioner (commissioner). The commissioner issued his final decision on August 13, 1997. In a section entitled "Evidence of the Case," the commissioner noted that Nettles claimed varying degrees of disability to her neck, hip and stomach due to the injury by accident. In that same section, the commissioner recited the medical evidence concerning the treatment Nettles received for a spinal injury, pain in the iliac region, and gastrointestinal problems resulting from the "nonsteroidal medication" prescribed by Dr. Johnson. The commissioner went on to make "findings of fact" which included a finding that Nettles suffered permanent partial disability of 25% for the injury to her spine and 10% for the injury to her stomach. There were no findings of fact concerning the problems associated with the iliac crest.

On August 25, 1997, Nettles filed a Form 30 requesting the commission review the decision of the commissioner. Specifically, Nettles raised the issue of whether the "Commissioner err[ed] in failing to find that [Nettles] had a compensable injury to her right iliac crest." By order dated February 26, 1998, the commission adopted the commissioner's findings of fact and conclusions of law in their entirety and affirmed the commissioner.

Nettles perfected a timely appeal of the commission's decision to the circuit court which affirmed the commission in an

---

2. Dr. Shallcross opined that Nettles suffers from a meralgia paresthetica (an abnormal pain in the thigh usually resulting from the resumption of blood flow to a nerve after a mild injury) which entitled her to a 9% impairment of her "right lower extremity" as reckoned by the American Medical Associations' *Guide to Evaluation of Permanent Impairment* (4th ed.). Dr. Shallcross also opined that Nettles was entitled to a 15% whole body impairment for her cervical radiculopathy (impairment of the spinal nerves in the neck). The neck and thigh pain combine for a whole body impairment of 19%.

order dated December 10, 1998. Although the circuit court noted that Nettles set forth seven exceptions to the commission's decision including its "failure to award permanent partial disability to the right iliac crest," the court found there was substantial evidence in the record to support the commission's failure to award any disability to the right iliac crest.

## LAW/ANALYSIS

The Administrative Procedures Act establishes the standard of review for decisions by the South Carolina Workers' Compensation Commission. *Lark v. Bi–Lo, Inc.*, 276 S.C. 130, 276 S.E.2d 304 (1981). The reviewing court may not substitute its "judgment for that of the Commission as to the weight of the evidence on questions of fact, but may reverse where the decision is affected by an error of law." *Lester v. South Carolina Workers' Compensation Comm'n*, 328 S.C. 535, 538, 493 S.E.2d 103, 105 (Ct.App.1997) *rev'd in part on other grounds* 334 S.C. 557, 514 S.E.2d 751 (1999). We must affirm the commission's decision unless it is " 'clearly erroneous' in view of the substantial evidence on the whole record." *Lark*, 276 S.C. at 136, 276 S.E.2d at 307. Substantial evidence is evidence that, in viewing the record as a whole, would allow reasonable minds to reach the same conclusion that the full commission reached. *Miller v. State Roofing Co.*, 312 S.C. 452, 441 S.E.2d 323 (1994).

### I.

Nettles argues the circuit court erred by affirming the commission which analyzed her various ailments as separate specific disabilities rather than amalgamating them into a general disability. The employer responds by asserting that "[g]eneral disability is not now, and never has been a part of this case." Although we believe Nettles properly raised a claim of general disability to the commission, we find no evidence in the record of lost earning capacity to support such a claim. Accordingly, we affirm the decision below.

On August 24, 1994, Nettles filed a Form 50 with the commission seeking workers' compensation benefits for a per-

manent disability of her "neck and back."[3] By "checking a box" in paragraph 8 of the Form 50, Nettles characterized the "nature and extent" of her disability as "Specific" rather than "General." However, during a stop-payment hearing on July 25, 1997, Nettles's attorney orally raised a claim of "total disability" based upon the emergence of hip and gastrointestinal complications from the compensable neck injury. Those claims were heard without objection by the single commissioner.

 A designation of either specific or general disability on a Form 50 is not an election of remedies. *Harbin v. Owens–Corning Fiberglas,* 316 S.C. 423, 450 S.E.2d 112 (Ct. App.1994). In *Harbin,* this Court held that a claim to "any and all rights" under the Workers' Compensation Act was sufficient to plead a specific disability even though the claimant had checked the general disability box on his Form 50. In the claim *sub judice,* paragraph 12 of the Form 50 contained a boilerplate claim for "[a]ppropriate benefits as provided in the [Workers' Compensation] Act for the above grounds and *other relief* as the Workers' Compensation Commission may direct as just and proper." (Emphasis added). This boilerplate claim is sufficiently analogous to the language of *Harbin* to constitute a general disability claim. *Cf. Halks v. Rust Eng'g Co.,* 208 S.C. 39, 45, 36 S.E.2d 852, 854 (1946) ("[W]hen a claim is filed, all elements of compensation are included, the Court stating that 'it was not contemplated by the Act that different parts of the total result of one accident should be regarded as separate claims.'") (*quoting Gold v. Moragne,* 202 S.C. 281, 291, 24 S.E.2d 491, 494 (1943)). Accordingly, Nettles's general disability claim was properly before the commission.

 The circuit court did not err in upholding the commission's failure to award general disability benefits because Nettles failed to demonstrate any loss of earning capacity. In *Fields v. Owens Corning Fiberglas,* the supreme court stated:

Under our Worker's Compensation Act, a claimant may proceed under § 42–9–10 or § 42–9–20 to prove a general disability; alternatively, he or she may proceed under § 42–9–30 to prove a loss, or loss of use of, a member, organ, or

---

3. At that time, neither the pain in Nettles's iliac crest nor her gastrointestinal difficulties had presented themselves.

part of the body for which specific awards are listed in the statute. It is well-settled that an award under the general disability statutes must be *predicated upon a showing of a loss of earning capacity,* whereas an award under the scheduled loss statute does not require such a showing. *Fields,* 301 S.C. 554, 555, 393 S.E.2d 172, 173 (1990) (emphasis added) (citations omitted); *see also Hendricks v. Pickens County,* 335 S.C. 405, 517 S.E.2d 698 (Ct.App.1999).

Nettles contends "[t]here is no substantial evidence indicating that [she] is able to work." However, *Fields* and its progeny clearly require proof of loss of earning capacity; the record reveals no such evidence. In fact, the record contains no evidence that Nettles even sought employment. *See Floyd v. City of Charleston,* 287 S.C. 474, 339 S.E.2d 166 (Ct.App. 1986) (employee has burden of showing that she could neither hold any other employment nor locate another job). Accordingly, Nettles has not established that she is entitled to a general disability award.

## II.

■ Nettles also contends the circuit court erred in finding substantial evidence to support the full commission's failure to award her partial disability for her right lower extremity. As the commission made no specific finding of fact concerning this issue, but implicitly ruled on it, we must remand the issue to the commission for a proper finding.[4]

---

4. The commission's failure to explicitly rule on an issue raised to it in a Form 30 does not create an error preservation problem although a similar omission in a civil proceeding would be fatal. While a trial court's ruling may be challenged by an aggrieved party with a motion to reconsider under Rule 59 or 60, worker's compensation law does not contain a motion to reconsider before the commission. An aggrieved party may not challenge the commission's decision with a motion to the commission, but only with an appeal to the circuit court. *See* S.C.Code Ann. § 42–17–60 (Supp.1999) ("The award of the commission ... is conclusive and binding as to all questions of fact."); S.C. ADC 67–215 ("[The commission] will not address a motion involving the merits of the claim. . . ."); *compare Grant v. South Carolina Coastal Council,* 319 S.C. 348, 461 S.E.2d 388 (1995) (finding that an inaccuracy in the trial court's order must be raised to the trial court by way of a Rule 59(e) motion to alter or amend a judgment before the inaccuracy may be challenged on appeal), *with Lloyd v. AT & T Nassau Metals Corp.,* 299 S.C. 207, 209, 383 S.E.2d 257, 259 (Ct.App.1989) ("[T]he proper

■ In awarding permanent partial disability benefits for the neck and stomach injuries, but not for the related hip injury, the commission implicitly ruled that Nettles suffered no debilitating injury to her hip. *See Dameron v. Spartan Mills*, 211 S.C. 217, 44 S.E.2d 465 (1947) (commission implicitly ruled the claimant had reasonably pursued her claim by denying her employer's motion to charge her with the costs of the action); *Halks v. Rust Eng'g Co.*, 208 S.C. 39, 36 S.E.2d 852 (1946) (commission implicitly found the claimant had reached MMI by granting award for serious disfigurement because the relevant statute prohibited such an award if claimant had not reached MMI); *Morgan v. JPS Automotives*, 321 S.C. 201, 467 S.E.2d 457 (Ct.App.1996) (finding that the commission's award of 100% disability to the right arm "impliedly" rejected the claimant's whole body disability claim).

Although Nettles only suffered one compensable injury to her spine, she sought disability benefits for her spine, hip (right lower extremity), and stomach. Workers' Compensation only awards benefits for disabilities causally connected to a work-related injury. S.C.Code Ann. § 42–1–160 (Supp. 1999); *see also Owings v. Anderson County Sheriff's Dep't.*, 315 S.C. 297, 433 S.E.2d 869 (1993); *Kennedy v. Williamsburg County*, 242 S.C. 477, 131 S.E.2d 512 (1963). Therefore, Nettles had to establish a causal connection between each alleged disability and her spinal injury. *See Estridge v. Joslyn Clark Controls, Inc.*, 325 S.C. 532, 538, 482 S.E.2d 577, 580 (Ct.App.1997) ("A condition which is induced by a physical injury, is thereby causally related to that injury."). Nettles established the causal connections by showing her spinal disability was directly linked to the spinal injury, whereas her hip and stomach disabilities resulted from the treatment of her spinal disability which, in turn, was caused by the job-related injury.

On February 1, 1994, Dr. Johnson performed the ACDF procedure on Nettles's spine which corrected the injury to her

remedy [to an error in the single commissioner's order] is a timely appeal to the full Commission and then to the courts. . . . It is a rule of repose."). Accordingly, the commission's failure to rule on Nettles's alleged hip injury did not prevent her from raising the issue to the circuit court because she raised the issue on her Form 30 and could not have made a motion for the commission to reconsider its order.

neck. After a satisfactory recovery, Johnson released Nettles from his care on April 18, 1994. Approximately four months later, Nettles began to experience pain in her right hip near the site where Dr. Johnson harvested bone for use in the ACDF surgery. Dr. Johnson prescribed a variety of different medicines to treat the hip. Some of those medicines led to the onset of gastrointestinal problems in February 1996, nearly two years after Nettles was released from the ACDF surgery.

The causal link between the spinal injury and ACDF surgery is direct and obvious. The link between the spinal injury and the hip pain is indirect as the hip problem was a complication of the ACDF surgery, not the injury itself. The link between the spinal injury and Nettles's stomach difficulties is even more attenuated than that of the hip because the stomach is a complication of the hip which itself is a complication of the ACDF surgery. The commission could not have causally linked the stomach problem to the ACDF surgery without also finding that the hip was linked to the surgery. Therefore, the commission "implicitly" ruled that although the hip problem was causally connected to the injury, it did not cause Nettles any permanent disability thereby justifying an award of 25% permanent partial disability for the spine, 10% for the stomach, but nothing for the hip.

 The commission's implicit ruling concerning the hip is too indefinite for this Court to review. The commission must make specific findings of fact upon which a claimant's right to compensation are based. *See* S.C.Code Ann. § 1–23–350 (1986); *Shealy v. Algernon Blair, Inc.*, 250 S.C. 106, 109, 156 S.E.2d 646, 648 (1967); 73A C.J.S. *Public Administrative Law and Procedure* § 144, at 104 (1983) ("Where the requirements as to administrative findings are contained in statutes, the findings must comply therewith."). In fact, "awards without such specific findings do not comply with the requirements of the [workers' compensation] act and are illegal." *Id.* at 110, 156 S.E.2d at 648; *see also Airco, Inc. v. Hollington*, 269 S.C. 152, 160, 236 S.E.2d 804, 808 (1977) (finding that the commission has a statutory duty to make a finding of fact for all "essential factual issues."). This court cannot make findings of fact when the commission has failed to do so because, in doing so, this court would improperly assume the commission's role as factfinder. *Fox v. Newberry County Memorial Hosp.*,

319 S.C. 278, 280, 461 S.E.2d 392, 394 (1995). Because the commission did not make specific findings of fact to support its ruling, we must remand the issue to the commission. *See, e.g., Parsons v. Georgetown Steel,* 318 S.C. 63, 456 S.E.2d 366 (1995) (holding an order of the commission that does not include sufficiently detailed findings of fact must be remanded to the commission).

### III.

Nettles also argues the circuit court erred by affirming the commission because the commission failed to order her employer to pay $4,100.00 in medical expenses which were incurred primarily during the treatment of her stomach disorder. We agree.

The Employer concedes this issue in part: "[T]o the extent the Claimant has documented out-of-pocket medical expenses causally related to her job injury and owing to treating physicians authorized by the School District, the School District will process them for payment...." As the record contains evidence of unreimbursed medical expenses which are causally related to the compensable injury, we remand this issue to the commission for a determination of what medical expenses are owed Nettles.

### IV.

Finally, Nettles argues the circuit court erred in finding the commission's determination that she achieved MMI on April 14, 1997, was supported by substantial evidence. We disagree.

There is substantial evidence to support the commission's finding that Nettles reached MMI on April 14, 1997. *See* S.C.Code Ann. § 1–23–380(A)(6) (Supp.1999) ( [t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact); *Lark v. Bi–Lo, Inc.,* 276 S.C. 130, 276 S.E.2d 304 (1981). Dr. Johnson found Nettles had reached MMI with regard to her cervical spine on January 24, 1997. Additionally, Dr. Shallcross opined that Nettles had reached MMI on April 14, 1997, and assigned a whole person impairment rating of 15% as well as impair-

ment ratings to Nettles spine and right lower extremity. Where there is conflicting medical evidence, as in this case, the findings of fact of the commission are conclusive. *Mullinax v. Winn–Dixie Stores, Inc.*, 318 S.C. 431, 458 S.E.2d 76 (Ct.App.1995). Therefore, the circuit court did not err in finding that the commission's determination that Nettles reached MMI on April 14, 1997, was supported by substantial evidence.

## CONCLUSION

We hold that Nettles failed to prove she is entitled to a general disability award and that the commission's determination that Nettles reached maximum medical improvement on April 14, 1997, is supported by substantial evidence. We also hold that the employer is required by law to pay for that treatment which tended to lessen the period of Nettles's gastrointestinal disability and remand the action for a proper determination of those expenses. Finally, we find insufficient evidence in the record to review the commission's denial of an award of permanent partial disability for the complication arising from the operations performed on Nettles's right hip and remand the action to the commission for a proper finding.

For the foregoing reasons, the order of the circuit court is **AFFIRMED IN PART, REVERSED IN PART AND REMANDED.**

GOOLSBY, J. and MOREHEAD, Acting Judge, concur.